ROBERT M. MURPHY, Judge.
|2In this second appeal, defendant, Has-san A. Abdul, appeals his March 6, 2013 adjudication and sentencing as a second felony offender. The underlying facts are set forth in this Court’s previous opinion in State v. Abdul, 11-863 (La.App. 5 Cir. 4/24/12), 94 So.3d 801, writs denied, 12-1224 (La.10/12/12), 99 So.3d 41, and 12-1226 (La.10/12/12), 99 So.3d 41, and are not relevant to the calculations of the multiple bill cleansing period presented here. For the following reasons, we affirm defendant’s second felony offender status and sentencing.

PROCEDURAL HISTORY

On August 19, 2009, the Jefferson Parish District Attorney filed a bill of information charging defendant, Hassan A. Abdul, with attempted second degree murder in violation of La. R.S. 14:27 and 14:30.1 (Count 1), and possession of a firearm by a convicted felon, in violation of La. R.S. 14:95.1 (Count 2). The trial judge granted defendant’s motion to sever the two counts on May 2, 2011. On May 3 and 4, 2011, the matter proceeded to trial on the attempted second degree Rmurder charge only, and a 12-person jury unanimously found defendant guilty as charged. Abdul, 11-863, at 3-4, 94 So.3d at 807.
On May 16, 2011, defendant filed a motion for a new trial, which was denied that same day. The trial judge then sentenced defendant to imprisonment at hard labor for 25 years. The State subsequently filed a multiple bill alleging defendant to be a second felony offender, and defendant denied those allegations. After a hearing on May 16, 2011, the trial judge found defendant to be a second felony offender. The trial judge then vacated defendant’s original sentence and resentenced him under the multiple bill statute to imprisonment at hard labor for 25 years without the benefit of parole, probation, or suspension of sentence. Abdul, 11-863 at 3-4, 94 So.3d at 807.
Also on May 16, 2011, defendant withdrew his not guilty plea as to Count 2 and pled guilty as charged. The trial judge then sentenced defendant to 10 years imprisonment at hard labor on Count 2 without the benefit of parole, probation, or suspension of sentence, to run concurrently with the sentence on Count 1 and any other sentence being served by defendant. On May 18, 2011, defendant filed a timely motion for appeal that was granted. Abdul, 11-863 at 3-4, 94 So.3d at 807.
On April 24, 2012, this Court affirmed defendant’s conviction of attempted second degree murder; however, it vacated defendant’s adjudication as a multiple offender and the enhanced sentence imposed in connection therewith, reinstated and affirmed the sentence originally imposed on defendant as a result of his conviction of attempted second degree murder, and remanded for further proceedings. Abdul, 11-863 at 30-31, 94 So.3d at 822.
On January 23, 2013, the State filed another multiple bill alleging defendant to be a second felony offender, and defendant denied those allegations. Defendant subsequently filed two pleadings which were *367 State’s both entitled “Objection to | introduction of Documents and/or Evidence of Prior Conviction” that were denied. On March 6, 2013, he filed a motion to quash the multiple bill that was also denied. On that same date, a multiple bill hearing was held, after which the trial judge found defendant to be a second felony offender. The trial judge vacated the sentence on Count 1 and resentenced defendant under the multiple bill statute to imprisonment at hard labor for 25 years without benefit of parole, probation, or suspension of sentence to run concurrently with the sentence on Count 2 and any other sentence that defendant was serving. On March 21, 2013, defendant filed a notice of intent to seek supervisory writs that was construed as a timely motion for appeal and was granted.
In his single assignment of error, defendant contends that the evidence at the hearing on the multiple bill was insufficient to support the adjudication as it failed to prove that the date of actual discharge from State supervision was within the ten-year cleansing period.

DISCUSSION

Defendant contends that the State failed to prove that the ten-year cleansing period had not run since actual discharge from State supervision. Defendant asserts that his testimony established that his probation officer released him from supervision in December of 1998, more than ten years before he committed the instant offense on May 24, 2009. Also, defendant asserts that his testimony was corroborated by an April 15, 1998 minute entry which shows his case was closed on that date.
The State responds that the trial court properly adjudicated defendant to be a second felony offender. The State contends that the testimony of Agent James Seymour established that defendant’s probation terminated on July 16, 2000, well 15within ten years of the date defendant committed the instant offense on May 24, 2009.
In his first appeal, defendant argued that the trial judge erred by finding him to be a second felony offender. This Court agreed, finding that the evidence was insufficient to prove that defendant was a second felony offender. In its opinion, this Court noted that on February 27, 1997, defendant pled guilty to second degree battery, and on July 16, 1997, the trial judge sentenced defendant to imprisonment at hard labor for three years, suspended, and three years active probation. This Court further noted that the underlying offense was committed on May 24, 2009; thus, more than the ten-year cleansing period had elapsed between defendant’s conviction on the 1997 predicate felony and his commission of the subsequent offense. As such, this Court asserted that the State was required to prove that the subsequent offense was committed within ten years of defendant’s release from state custody; however, there was nothing in the record to show the date of discharge from state custody. Therefore, this Court vacated the multiple offender adjudication and enhanced sentence and determined that the State could “retry” defendant as a multiple offender since double jeopardy principles were inapplicable to sentence enhancement proceedings. Abdul, 11-863 at 29, 94 So.3d at 821.
The State filed another multiple bill alleging defendant to be a second felony offender. At the multiple bill hearing, Sergeant Joel O’Lear, an expert latent fingerprint examiner, testified that he took defendant’s fingerprints in court and compared them to the fingerprints on a bill of information contained in a certified conviction packet from Orleans Parish, after which he concluded that the fingerprints matched.
*368 | fiJames Seymour, a probation and parole agent with the Department of Public Safety and Corrections, testified that he brought a copy of defendant’s probation file with him to court. He explained that the original file was destroyed during Hurricane Katrina and that the current file had been recreated from court documents and a database known as “CAJUN.” Agent Seymour further testified that the documents in the file indicated defendant completed probation with their office on July 16, 2000. The file was admitted into evidence as State’s Exhibit 4. On cross-examination, Agent Seymour asserted that the start date on defendant’s sentence was July 16, 1997, and that he was given a three-year sentence. Agent Seymour also asserted that he was not defendant’s probation officer in 1997 or 2000, and that he was not privy to any conversations between defendant’s probation officer and defendant.
Defendant testified that he was initially ordered to be on probation for three years, but that his probation officer, Clifford Provost, vacated his probation in December of 1998. Defendant claimed that his probation officer changed his probation from active to inactive because he went to Virginia to work at the Newport Shipyard and because he did well on his probation and stayed out of trouble. Defendant asserted that his probation officer gave him a printout of his early dismissal but that it was destroyed. On cross-examination, defendant admitted that on February 27, 1997, he pled guilty to second degree battery in Orleans Parish in case number 384-810. He further admitted that he did not go to court to have his probation terminated, and that a court did not terminate or modify his probation.
Following defendant’s testimony, the State argued that it had established that defendant was the same person who was convicted of the predicate felony and that the ten-year cleansing period had not yet run between the predicate felony 17conviction and the instant conviction. Defense counsel responded that the probation officer had discretion to release defendant early from probation. The trial judge disagreed and took judicial notice that a probation officer did not have the right to terminate someone’s probation early. Defense counsel argued that the State did not prove beyond a reasonable doubt that defendant’s probation did not end early as defendant testified.
After considering the testimony and the arguments of counsel, the trial judge found defendant to be a second felony offender. The trial judge said that once a hard labor sentence started, a court did not have the authority to amend that sentence. She also said that the Department of Probation and Parole did not have the authority to amend a sentence without court approval. Next, the trial judge stated that according to the probation record, defendant’s probation ran from 1997 through July 16, 2000. She noted that although defendant might not have had contact with his probation officer for the past year and a half, he was still on probation even if he was on inactive status. After reviewing defendant’s file, the trial judge found that the time period between the end of defendant’s probation and the arrest on the current charge was less than ten years and, therefore, the State had proven that defendant was a second felony offender.
The State bears the burden of proving that the predicate convictions fall within the “cleansing period” prescribed by La. R.S. 15:529.1(C). State v. Hollins, 99-278, p. 21 (La.App. 5 Cir. 8/31/99), 742 So.2d 671, 685, writ denied, 99-2853 (La.1/5/01), 778 So.2d 587. This ten-year “cleansing period” begins to run from the date that a defendant is actually dis *369 charged from state custody and supervision. State v. Anderson, 349 So.2d 311, 314 (La.1977); State v. Thomas, 04-1341, 04-1342, p. 15 (La.App. 5 Cir. 5/31/05), 904 So.2d 896, 906, writ denied, 05-2002 (La.2/17/06), 924 So.2d 1013. Thus, the commencement of the “cleansing period” |8is from the date of discharge from state supervision because the discharge can take place earlier than the theoretical date on which the sentence would have terminated due to pardon, commutation or good time credit, or it could take place later because of parole revocation. State v. Humphrey, 96-838, p. 13 (La.App. 5 Cir. 4/29/97), 694 So.2d 1082, 1088, writ denied, 97-1461 (La.11/7/97), 703 So.2d 35. However, if less than the “cleansing period” has elapsed between a defendant’s conviction on a predicate felony and his commission of a subsequent predicate felony, the State need not prove the date of discharge on the earlier sentence in the habitual offender proceedings. State v. Brooks, 01-864, p. 12 (La.App. 5 Cir. 1/29/02), 807 So.2d 1090, 1101.
In the instant ease, the record shows that defendant pled guilty to second degree battery on February 27, 1997, and that he received a three-year suspended sentence and three years of active probation on July 16, 1997. The underlying offense was committed on May 24, 2009. Agent Seymour testified that defendant’s probation terminated on July 16, 2000, and information contained in defendant’s probation file corroborates the agent’s testimony. Even though defendant testified that his probation officer terminated his probation early, the trial judge took judicial notice that a probation officer did not have the right to do so. Also, the record does not reflect that a court terminated defendant’s probation early pursuant to La.C.Cr.P. art. 897.[1] Additionally, although defendant asserts that his testimony was corroborated by an April 15, 1998 minute entry which shows his case was closed on that date, the docket master in State’s Exhibit 3 shows that on April 20, 1998, the entry read, “Disregard the minute entry of 4/15/98.”
|9In light of the foregoing, we find that the trial judge did not err in finding that the State proved that the time period between defendant’s discharge from state supervision and the commission of the subsequent offense was less than ten years and, therefore, the evidence was sufficient to prove that defendant was a second felony offender.
This assignment of error lacks merit.
ERROR PATENT DISCUSSION[2]
The record was reviewed for errors patent, according to La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La. *370 App. 5 Cir.1990). The review reveals no errors patent.

AFFIRMED.

. La.C.Cr.P. art. 897 provides that "[i]n a felony case the court may terminate the defendant’s probation and discharge him at any time after the expiration of one year of probation." (Emphasis added).

. It is noted that this is defendant’s second appeal. Defendant received an error patent review upon his original appeal; therefore, he is not entitled to a second error patent review of his underlying conviction and sentence. However, the record on appeal regarding defendant’s habitual offender proceedings and sentencing was reviewed. See State v. Smith, 12-580, p. 9 (La.App. 5 Cir. 12/27/12), 106 So.3d 1265, 1270 n. 3, writ denied, 13-333 (La.9/13/13), 120 So.3d 280. But see State v. Moore, 12-102 (La.5/25/12), 90 So.3d 384, writ denied, 11-2476 (La.6/22/12), 90 So.3d 455, finding that a habitual offender hearing should not be considered part of the record for purposes of error patent review and that a defendant must assign as error any perceived defect in the proceedings to preserve appellate review of the claimed error.