SUSAN M. CHEHARDY, Chief Judge.
|?On appeal, defendant challenges the trial court’s denial of his motion to with *1171 draw his guilty plea to carnal knowledge of a juvenile, a violation of La. R.S. 14:80. For the following reasons, we affirm and remand for correction of a patent error.

Procedural history

On November 10, 1998, the Jefferson Parish District Attorney filed a bill of information charging defendant, Tori L. Jones, with carnal knowledge of a juvenile, in violation of La. R.S. 14:80. Defendant was arraigned and pled not guilty on November 19,1998. Defendant filed pre-trial motions, including a motion to suppress statement, which was denied after a hearing on July 21,1999.
On August 16,1999, defendant withdrew his former plea and tendered a plea of guilty to carnal knowledge of a juvenile, which the trial judge accepted. On October 6, 1999, defendant filed a pro se Motion to Withdraw Guilty Plea, which was heard and denied by the trial court on October 19,1999. That same day, the trial court sentenced defendant to four years imprisonment at hard labor, concurrent with sentence imposed in a parole revocation and the sentence imposed |sm case number 99-1283.[1] On October 26, 1999, defendant filed a Motion for Appeal. After substantial delays, defendant’s appeal was granted on November 26, 2012.[2]

Facts

Defendant’s conviction resulted from a guilty plea so the circumstances surrounding the charged offense were gleaned from the record, including testimony presented at defendant’s suppression hearing. Here, the bill of information alleges that, on September 15, 1998, defendant, whose date of birth is December 28, 1976, violated La. R.S. 14:80[3] and committed carnal knowledge of a juvenile, by having consensual vaginal intercourse with a juvenile female, who was over 12 but under 17 years of age, where there was an age difference of greater than two years between the persons. Further, at the suppression hearing, the State introduced defendant’s statement, in which he acknowledged that, on September 15, 1998, he performed consensual oral sexual intercourse on K.W.,[4] a *1172 female known to him to be a minor. Defendant also admitted that he engaged in non-consensual vaginal sexual intercourse with K.W. on that same date.
| ¡Law and argument
On appeal, defendant raises two assignments of error: first, the trial court erred by denying the motion to withdraw the guilty pleas; and, second, Mr. Jones was denied the effective assistance of counsel.
In his first assignment of error, defendant argues that the record as a whole fails to show that he made a knowing and intelligent waiver of his constitutional rights when he entered his guilty plea. Specifically, defendant contends that prior to the acceptance of. his guilty plea, the trial court failed to advise him of his constitutional right to remain silent, and failed to conform to the statutory requirement that he be advised of his duty to register as a sex offender.
The State responds that, while the guilty plea colloquy does not address defendant’s privilege against self-incrimination, the waiver of rights form contains a waiver of that privilege, which was signed by defendant, his attorney, and the trial judge. The State maintains that there is a sufficient affirmative showing in the record that defendant was advised of his privilege against self-incrimination, and knowingly, intelligently, and voluntarily waived that right. The State further asserts that the failure to advise defendant of the sex offender registration requirement does not render defendant’s plea involuntary and does not provide defendant with valid grounds to withdraw his guilty plea.
A guilty plea will not be considered valid unless the plea was a free and voluntary choice on the part of the defendant. State v. Nuccio, 454 So.2d 93 (La.1984). Under Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), the decision to plead guilty will not be considered free and voluntary unless, at the very least, the defendant was advised of his constitutional rights against self-incrimination, to a trial by jury, and to confront his accusers. The waiver of those rights must be on the record, unequivocal, express and knowing, and free and voluntary. State ex rel. Jackson v. Henderson, 260 La. 90, 255 So.2d 85 (1971); State v. Nuccio, supra.
While it is preferable for the trial judge to conduct a colloquy with the defendant to ascertain the validity of the plea, such a colloquy may not be indispensable, as long as the record contains some other affirmative showing to support the plea. State v. Halsell, 403 So.2d 688, 690 (La.1981). In State v. Strain, 585 So.2d 540, 543 (La.1991), the Louisiana Supreme Court emphasized that the determination of a valid waiver of counsel during a guilty plea depends on the entire record and not just by certain magic words used by the trial judge.
In State v. Hinson, 01-1548 (La.9/14/01), 797 So.2d 32, 32-33 (per curiam), the Louisiana Supreme Court found that the defendant knowingly and intelligently waived his right to counsel before pleading guilty based on the totality of the circumstances. The court, citing Strain, supra, reiterated that whether a plea is knowing and voluntary is determined by the entire record and not just by certain magic words used by the trial judge. See also, State v. Vicknair, 09-612 (La.App. 5 Cir. 1/26/10), 32 So.3d 238, 243.
*1173 Further, a written form containing a waiver of rights is a part of the record, and can be examined to determine the free and knowing nature of the plea. State v. Dunn, 390 So.2d 525 (La.1980). In Dunn, the Louisiana Supreme Court noted that, during the guilty plea colloquy, the trial judge failed to specifically refer to the defendant’s privilege against self-incrimination. The supreme court opined that, although a “direct, three-right colloquy between the trial judge and defendant is preferable and ... encouraged,” a written waiver-of-rights form may be considered in determining whether the defendant was adequately “informed” of his rights. Dunn, 390 So.2d at 527. Finally, the Dunn court considered the waiver-of-rights form that was initialed and signed by the defendant a “sufficient affirmative | fishowing in the record of an express and knowing waiver of defendant’s privilege against self-incrimination.” Dunn, 390 So.2d at 527. This Court held similarly in State v. Hebert, 02-884 (La.App. 5 Cir. 12/30/02), 838 So.2d 30, 31-34 (transcript of the plea colloquy and the well-executed waiver-of-rights form constituted sufficient affirmative showing on the record that the defendant knowingly waived his privilege against self-incrimination without specific advisal of right against self-iricrimination from trial judge) and State v. Cole, 04-615 (La.App. 5 Cir. 3/1/05), 900 So.2d 15, 23-24 (explanation by defense counsel and a well-executed waiver-of-rights form were sufficient to support a knowing and voluntary guilty plea even without specific advisal of the right against self-incrimination from trial judge).
In the instant case, defendant withdrew his initial plea of not guilty and entered a plea of guilty to carnal knowledge of a juvenile on August 16, 1999. During the Boykin[5] colloquy, defendant informed the trial judge that he was 22 years old and had attended two years of college. The trial judge explained that defendant was being charged with carnal knowledge of a juvenile, and that the maximum sentence for conviction of that offense was 10 years at hard labor.
During the colloquy, the trial judge told defendant that no one could force him to plead guilty and confirmed that no one had used any force, intimidation, coercion, or promises of rewards to induce him to plead guilty. The trial judge further advised defendant that he had the right to hire an attorney of his choice, or, if he could not afford an attorney, to have an attorney appointed at no cost to him. The trial judge informed defendant that he had a right to trial by jury or, if he chose, by a judge; the right to confront his accusers; and the right to compel testimony from his witnesses.
[7Next, the trial judge told defendant that, if the court accepted his plea, defendant could not assert any allegation or defects such as an illegal- arrest, an illegal search and seizure, an illegal confession, or an illegal line-up. Defendant also indicated that he understood that, by pleading guilty, he was admitting that he did, in fact, commit the charged offense.
The trial judge asked defendant whether his attorney had advised him that, if his plea was accepted, his sentence would be four years at hard labor. Defendant indicated that he understood the offered agreement. The trial judge also informed defendant that this conviction could be used to enhance a sentence in the event of a subsequent conviction. Defendant indicated that he understood these rights and the fact that he was giving up these rights if he plead guilty. Following the colloquy, the trial judge accepted defendant’s plea, finding that defendant had made a knowing, intelligent waiver of his rights, and *1174 that his guilty plea was knowing, intelligent, free and voluntary.
Further, the transcript of the guilty plea proceedings reflects that, prior to the colloquy, defendant’s attorney advised the trial judge that he had completed the appropriate waiver-of-rights, or Boykin, form with defendant. The first paragraph of that Boykin form, which was introduced into the record, reads:
Your attorney has indicated to me that he/she advised you of your rights (1) to a trial by jury or by the Court alone, (2) to confront your accusers, and (3) of your right against self-incrimination, and that by entering a plea of guilty you are waiving or giving up these rights. He/she has' also indicated to me that you have advised him/her that you understand these things. Is that correct?
| SA1 though defendant did not initial that introductory paragraph, he did initial the remaining questions on the form.[6] Furthermore, defendant struck through language in the paragraph immediately above his signature to specify that he was not waiving the statutory delay between his guilty plea and sentencing as noted:
I, as the defendant in this case, acknowledge that the foregoing has been read to me, that my attorney and the trial judge have explained the nature of the crime to which I am pleading guilty, all of my rights to me, and what rights I am waiving or giving up, as listed above, and that I have been given every opportunity by the trial judge to ask questions in open court about anything I do not understand and about all of the consequence regarding my plea of guilty. I am completely satisfied with the explanations of my attorney and the judge.
I, further acknowledge that my act of pleading guilty is a knowing, intelligent, free and voluntary act on my part. I know that no one can force me to plead guilty. I know that by pleading guilty I admit I committed the said crime. I know this plea of guilty is more than a confession. It is also a conviction. Nothing remains except for the judge to give judgment and give me my punishment. I waive-ahr delays-for sentencing and-acknowledge-I am-ready for-sentencing, (Emphasis in original).
The waiver of' constitutional rights form was signed by defendant and his attorney, then signed and dated by the trial judge.
Upon review, we find that, although the trial judge did not specifically advise defendant of his right against self-incrimination, defendant’s plea colloquy along with the well-executed waiver-of-rights form constitutes a sufficient affirmative showing on the record that defendant knowingly waived his privilege against self-incrimination. Dunn, supra.
Next, defendant argues that his guilty plea is invalid because he was not advised of the sex offender registration requirements.[7] At the time of the instant *1175 Igoffense,[8] La. R.S. 15:543(A)[9] provided: “[t]he court shall provide written notification to any defendant charged with a sex offense of the registration requirements of La. R.S. 15:542.[10] Such notice shall be included on any guilty plea forms and judgment and sentence forms provided to the defendant.”
The record supports defendant’s contention that he did not receive notice as required by La. R.S. 15:543 before tendering his guilty plea. Defendant does not, however, specify how the court’s omission affected the voluntariness of his guilty plea.
In State v. Smith, 09-769 (La.App. 5 Cir. 3/9/10), 38 So.3d 894, writ denied, 10-0843 (La.11/5/10), 50 So.3d 812, the defendant appealed his conviction claiming his guilty plea was not knowing and voluntary because he was not advised of the sex offender registration requirements at any time during the plea process. This Court found that the record demonstrated the defendant’s guilty plea was knowing and voluntary despite the fact that he was not advised of the sex offender registration requirements. This Court noted the defendant received a very favorable plea bargain. The defendant’s charge was reduced from aggravated rape to forcible rape, and thus, his sentence was reduced from a possible life sentence to 25 years. Additionally, the State agreed not to file a multiple offender bill against the defendant using the instant conviction as an underlying felony. The plea colloquy also established that defendant was advised of his rights and voluntarily |1flwaived them. This Court held the trial court did not err in refusing to allow the defendant to withdraw his guilty plea on the basis that he was not informed of the sex offender registration requirements.
Here, as in Smith, supra, defendant received a very favorable result from his plea bargain. In this case, he bargained for a four-year sentence for his conviction for carnal knowledge of a juvenile as well as a concurrent 15-year sentence for his conviction for distribution of cocaine in case number 99-1283. Further, the State also dismissed a pending charge of distribution of cocaine within one thousand feet of a school and agreed not to file a multiple bill using the carnal knowledge conviction as an underlying conviction. Without his plea bargain, defendant was facing up to 40 years imprisonment with a fine up to $50,000.00.[11] Additionally, if the State had *1176 filed a multiple bill and successfully proved that defendant was a third felony offender,[12] he faced a possible life sentence under La. R.S. 15:529.1.
Moreover, as discussed infra, defendant’s guilty plea was knowing and voluntary; the guilty plea colloquy and Boykin form verify that defendant was advised of his rights and knowingly and voluntarily waived them. Accordingly, we find, as in Smith, supra, that the trial judge’s omission of advisal regarding the sex offender registration requirements in the present case did not render defendant’s guilty plea involuntary. Based on the foregoing, we find no error in the trial judge’s denial of defendant’s motion to withdraw his guilty plea. This assignment lacks merit.
In his second assignment of error, defendant argues that he was denied effective assistance of counsel. Specifically, he contends that his attorney and the Indistrict attorney misled and/or pressured him into pleading guilty by conveying to him that if he did not plead guilty, the State would seek a life sentence as a third felony offender. He further contends that the State indicated that one of the offenses that would be used as a predicate was a conviction for an armed robbery he committed as a juvenile, which he later learned could not be used to enhance his sentence. Thus, defendant maintains that his attorney should have advised him that the State’s threats of a life sentence were unfounded as they were not permissible under the law. Finally, defendant asserts that his counsel was ineffective for failing to file a timely motion for appeal on his behalf.
In response, the State argues that despite defendant’s contention that he pled guilty because he believed he faced a possible life sentence, nothing in the record supports defendant’s assertion that his counsel misled him as to the status of the law. The State also maintains that defendant has no right to challenge the viability of a habitual offender bill that was not filed. The State asserts that defendant entered into a favorable plea agreement and has failed to show.that his counsel’s performance was deficient or that he was prejudiced. The State maintains that at the close of the sentencing proceeding, defense counsel ensured that defendant understood the appeal and post-conviction prescriptive period and that his trial counsel would not handle his appeal. Finally, the State submits that the record demonstrates that defense counsel vigorously represented defendant throughout the proceedings and that defendant received a favorable plea agreement as a result. Accordingly, the State notes that defendant’s ineffective assistance of counsel claims do not meet either the first or second prongs of the Strickland test.
Under the Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution, a defendant is entitled to effective assistance of counsel. State v. McDonald, 04-550 (La.App. 5 Cir. 11/16/04), 889 So.2d 1039, 1042, writ denied, 04-3088 (La.4/1/05), 897 So.2d 599. A claim of ineffective assistance of counsel must satisfy the two-prong test set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). State v. Dabney, 05-53 (La.App. 5 Cir. 6/28/05), 908 So.2d 60, 63.
Under the Strickland test, the defendant must show: (1) that counsel’s performance was deficient, that is, that the *1177 performance fell below an objective standard of reasonableness under prevailing professional norms; and (2) that the deficient performance prejudiced the defense. State v. Dabney, 05-53, 908 So.2d at 63 (citing Strickland, 466 U.S. at 687, 104 S.Ct. at 2064). This requires showing that counsel’s errors were so serious as to deprive the defendant of a trial whose result is reliable. Id. The defendant must show that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id.
A court must indulge a strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action “might be considered sound trial strategy.” Id. There is no precise definition of reasonably effective assistance of counsel, so any inquiry into the effectiveness of counsel must be specific to the facts of the case, and must take into consideration the counsel’s perspective at the time. State v. LaCaze, 99-0584 (La.1/25/02), 824 So.2d 1063, 1078-79, cert. denied, 537 U.S. 865, 123 S.Ct. 263, 154 L.Ed.2d 110 (2002). The Sixth Amendment does not guarantee er-rorless counsel or counsel judged ineffective by hindsight. Id.
A claim for ineffective assistance of counsel is most appropriately addressed through an application for post-conviction relief filed in the trial court, where a full | ^^evidentiary hearing can be conducted, rather than on direct appeal. State v. Washington, 03-1135 (La.App. 5 Cir. 1/27/04), 866 So.2d 973, 983. However, when the record contains sufficient evidence to rule on the merits of the claim and the issue is properly raised by assignment of error on appeal, it may be addressed in the interest of judicial economy. State v. Deruise, 98-0541 (La.4/3/01), 802 So.2d 1224, 1248, cert. denied, 534 U.S. 926, 122 S.Ct. 283, 151 L.Ed.2d 208 (2001).
In this case, the record contains sufficient evidence to rule on the merits of defendant’s ineffective assistance of counsel claims. The record does not support defendant’s assertion that he was misled and/or pressured into pleading guilty in order to avoid a life sentence. Specifically, at the hearing on his motion to withdraw guilty plea, defendant argued that he pled guilty because he was told that he would face a possible life sentence if he did not.
Defendant testified that he later learned that his four prior convictions for armed robbery entered on October 2, 1991 could not be used as predicate convictions because they were juvenile adjudications.[13] Defendant stated that his attorney and the district attorney had misled him regarding the possibility of being adjudicated a third felony offender and sentenced to life imprisonment.
In response to defendant’s allegations, the prosecutor replied:
The defendant has accused all of us of threatening him with life imprisonment. I am not cavalier when I say this, but it was not a threat, it was a promise. I do not think I communicated that directly with Mr. Jones. It is not my usual practice. I never talk to defendants. I probably told that to Mr. Fleming—
[[Image here]]
*1178 —and the basis of it was that [defendant’s] rap sheet shows that on October 2nd, 1991, defendant was convicted of four counts of armed robbery. Those counts along with the distribution of marijuana which the multiple bill is based on and a conviction of this offense 114would allow the State to multiple bill him as a three time offender; three strikes and you’re out life sentence. Again, it was not a threat. It was an acknowledgement to defense counsel if he did not plea, that’s what the State intended to do.
Defense counsel further responded regarding his advisal with respect to this issue:
I did not indicate to Mr. Jones that he would receive life. I had indicated that the prosecutor would try to give him a life sentence. I told Mr. Jones that the first conviction, the armed robberies— well, actually it’s a juvenile adjudication which occurred prior to the change in the multiple offender law which now allows you to use some certain juvenile adjudications — I had had indicated to him it was my belief that they could not do that, that the court was inclined, however, to agree with the district attorney, and he might have a hard time on appeal with that issue. That it could — if the prosecutor’s position is right, he would face a mandatory life sentence.
I further communicated to Mr. Jones that even if we are right and he would still in fact be a second multiple offender, fifteen years would be the minimum sentence on that case, and he could certainly receive up to at least sixty years on the distribution and I guess twenty years on the carnal knowledge as a second offender, and it was certainly in his best interest.
Thus, the record in this case indicates that neither the prosecutor nor defense counsel misled the defendant as to the status of the law in effect at the time.[14]
Moreover, despite defendant’s contention that his attorney was inadequately representing him, the record reflects otherwise. Defense counsel advised the trial court that he hired a private investigator to work with him and thoroughly investigated this matter. Defense counsel filed various omnibus pre-trial motions including a Motion for a Preliminary Examination, Motion to Suppress the Evidence, Confession, Statement, and/or Identification, Motion for Pre-Trial Disclosure of Evidence of Independent and Separate Offense, Wrongs, or Acts, Motion for Criminal Records and Pending Charges of all State Witnesses, and a Motion for Reduction of Bond. Further, at the hearing on defendant’s Motion to | ir,Suppress Statement, defense counsel questioned various witnesses, reviewed all information given to him by defendant, and presented arguments in support of the motion.
Furthermore, defendant received the benefit of a favorable plea agreement despite defendant’s inculpatory statement regarding the instant offense. At the time of the offense, the sentencing exposure for the instant carnal knowledge of a juvenile was up to ten years. See, La. R.S. 14:80. Further, as part of the same plea bargain, defendant tendered a plea to distribution of cocaine, which exposed defendant to a minimum of five years and a maximum of thirty years at hard labor. See, La. R.S. *1179 40:967. Thus, defendant faced a possible maximum term of imprisonment of 40 years, if the sentences were imposed consecutively. Instead, pursuant to defendant’s plea agreement, he was sentenced to 15 years for the distribution of cocaine offense and four years for the carnal knowledge of a juvenile offense, to be served concurrently. The State agreed to dismiss a pending charge for distribution of a controlled dangerous substance within one thousand feet of a school.
Upon review, we find that defendant has failed to show that his counsel’s performance was deficient, and that he was prejudiced as a result. Strickland, 466 U.S. at 687, 104 S.Ct. at 2064; Dabney, 05-53, 908 So.2d at 68. Accordingly, defendant has failed to establish the first criteria to prove ineffective assistance under Strickland.
Lastly, defendant argues that he was denied effective assistance of counsel when his attorney failed to file a timely motion for appeal on his behalf. He argues that he was prejudiced by his counsel’s omission because the trial court originally dismissed his pro se motion for appeal as untimely, which took twelve years to rectify-
| ¶ (Although it is true that the trial court incorrectly denied defendant’s pro se motion for appeal as untimely, that ruling is not attributable to defense counsel. Moreover, any error in this regard was corrected by defendant when he filed a timely pro se motion for appeal and by the trial court when it granted defendant’s out-of-time appeal. See, State v. Wood, 34,819 (La.App. 2 Cir. 8/22/01), 793 So.2d 441, 452 (citing State v. James, 95-962 (La.App. 3 Cir. 2/14/96), 670 So.2d 461). Finally, the claim is rendered moot because the defendant is now before the court on appeal. Id.
In light of the foregoing, we find that defendant has failed to establish deficiency or prejudice as required under Strickland. This assignment of error lacks merit.

Errors patent

As is our routine practice, this record was reviewed for errors patent, according to La.C.Cr.P. art. 920. Our review reveals that defendant was not given a complete advisal regarding the time period for seeking post-conviction relief provided in La.C.Cr.P. art. 930.8.[15] Specifically, the transcript indicates that the trial judge advised the defendant that he has “two years from today’s date to seek post-conviction relief.” By this opinion, this Court can correct said error by informing the defendant of the applicable prescriptive period for post-conviction relief.[16] Accordingly, defendant is notified that no application for post-conviction relief, including an application for an out-of-time appeal, shall be considered if it is |17filed more than two years after the judgment of conviction and sentence have become final *1180 under the provisions of La.C.Cr.P. arts. 914 or 922.
Next, at the time of the offense,[17] carnal knowledge of a juvenile, in violation of La. R.S. 14:80, was defined as a sex offense under La. R.S. 15:542(E). La. R.S. 15:543(A) requires the trial court to notify a defendant charged with a sex offense in writing of the registration requirements of La. R.S. 15:542. As noted supra, the trial court failed to inform defendant of the sex offender registration requirements in accordance with La. R.S. 15:540 et seq. The trial court’s failure to provide this notice is an error patent that requires remand.[18]
Accordingly, this case is remanded to the trial court with instructions to the trial judge to inform defendant of the registration requirements for sex offenders by sending appropriate written notice to defendant, within ten days of this Court’s opinion, and to file written proof in the record that defendant received such notice. State v. Starr, 08-341 (La.App. 5 Cir. 11/25/08), 2 So.3d 451, 460-61, writ denied, 08-2991 (La.9/18/09), 17 So.3d 384. In all other respects, defendant’s conviction and sentence are affirmed.

AFFIRMED; REMANDED.

. On October 19, 1999, defendant also pled guilty to distribution of cocaine, in violation of La. R.S. 40:967A, in case number 99-1283. That day, the trial judge, in accord with the plea agreement, sentenced defendant to 15 years at hard labor to run concurrent to the sentence in the instant case, and a parole revocation that defendant was serving. Further, defendant has also appealed his conviction in case number 99-1283, which is before this Court in docket number 13-KA-99.

. On October 26, 1999, defendant filed a motion for appeal. On or about July 25, 2000, relator sought mandamus relief requesting that this Court order the trial judge to rule on defendant’s pro se motion for appeal. On August 11, 2000, this Court ordered the trial judge to rule on defendant's motion. State ex rel. Jones v. Green, 00-1343 (La.App. 5 Cir. 8/11/00) (unpublished writ disposition). On August 29, 2000, the trial judge denied defendant’s motion for appeal as untimely. After 12 years, defendant again' sought relief with this Court, which instructed the trial court to reconsider defendant’s motion for appeal. Jones v. State, 12-379 (La.App. 5 Cir. 6/1/12) (unpublished writ disposition). On November 26, 2012, the trial court granted defendant’s Motion for Appeal.

. On the date of the offense, La. R.S. 14:80(A) read:
Carnal knowledge of a juvenile is committed when: A person over the age of seventeen has sexual intercourse, with consent, with any person of the age of twelve years or more, but under the age of seventeen years, when there is an age difference of greater than two years between the two persons and the victim is not the spouse of the offender....

. ‘‘[T]o protect the identity and provide for the safety and welfare of crime victims who are minors under the age of eighteen years and of victims of sex offenses, all public officials ..., including but not limited to ... *1172 judicial officers shall not publicly disclose the name, address, or identity of crime victims who at the time of the commission of the offense are minors under eighteen years of age or of victims of sex offenses, regardless of the date of commission of the offense/’ La. R.S. 46:1844(W)(l)(a). As such, we will use initials to refer to the victim.

. 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).

. See, State v. Hebert, supra. "There has never been a requirement that a defendant initial each line in a plea form.” State v. Woods, 09-399 (La.App. 5 Cir. 3/9/10), 38 So.3d 391, 405, writ denied, 10-0784 (La.10/29/10), 48 So.3d 1096. See also, State v. Nelson, 10-760 (La.App. 5 Cir. 3/29/11), 63 So.3d 280, 283-284 (even though the well-executed waiver of constitutional rights form did not contain the defendant's initials, the plea colloquy and waiver form constituted a sufficient affirmative showing on the record that the defendant was advised of her rights, that she understood them, and that she made a knowing and intelligent waiver of them).

. Notably, defendant raises this issue for the first time on appeal. Defendant did not include this issue as a basis for his motion to withdraw guilty plea. However, a defendant’s failure to make a formal motion to withdraw a guilty plea does not prohibit a constitutionally infirm guilty plea from being set aside either by means of appeal or post- *1175 conviction relief. See, State v. Dixon, 449 So.2d 463, 464 (La.1984).

. In State v. Dick, 06-2223 (La.1/26/07), 951 So.2d 124, 127, the Louisiana Supreme Court stated "that the law in effect at the time of the commission of the offense is determinative of the penalty which the accused must suffer, State v. Wright, 384 So.2d 399, 401 (La.1980), and that a defendant must be sentenced according to the sentencing provisions in effect at the time of the commission of the offense. State v. Narcisse, 426 So.2d 118, 130-131 (La.1983), cert. denied, Narcisse v. Louisiana, 464 U.S. 865, 104 S.Ct. 202, 78 L.Ed.2d 176 (1983); [State v.] Sugasti, 01-3407 [(La.6/21/02)], 820 So.2d [518,] 520.”

. La. R.S. 15:543 was amended by Acts 2007, No. 460, § 2, eff. Jan. 1, 2008; Acts 2008, No. 816, § 1; and, most recently, Acts 2013, No. 408, § 1, effective August 1, 2013.

. La. R.S. 15:542 was amended Acts 1999, No. 930, § 1; Acts 1999, No. 1150, § 1; Acts 2001, No. 78, § 1; Acts 2001, No. 1206, § 1; Acts 2002, 1st Ex.Sess., No. 83, § 1; Acts 2003, No. 215, § 1; Acts 2003, No. 574, § 1; Acts 2004, No. 338, § 1; Acts 2005, 1st Ex. Sess., No. 11, § 1; Acts 2006, No. 204, § 1; Acts 2006, No. 284, § 1; Acts 2006, No. 663, § 1; Acts 2006, No. 683, § 1; Acts 2006, No. 791, § 1; Acts 2007, No. 460, § 2, eff. Jan. 1, 2008; Acts 2008, No. 147, § 1; Acts 2008, No. 273, § 1; Acts 2008, No. 814, § 1; Acts 2008, No. 816, § 1; Acts 2010, No. 400, § 1; Acts 2011, 1st Ex.Sess., No. 18, § 1; Acts 2011, No. 216, § 1; Acts 2012, No. 402, § 1; and, most recently, Acts 2013, No. 408, § 1, effective August 1, 2013.

. At the time of defendant’s convictions, an offender faced a maximum penalty of ten years under La. R.S. 14:80 for carnal knowl *1176 edge of a juvenile, and thirty years under La. R.S. 40:967(A) plus a possible $50,000.00 fine for distribution of cocaine.

. At the sentencing hearing, the State noted that defendant had prior convictions for armed robbery and distribution of marijuana.

. At the hearing on defendant’s motion to withdraw his guilty plea, the State asserted that defendant’s, rap sheet showed that defendant was convicted of four counts of armed robbery on October 2, 1991. Defendant, who was bom on December 28, 1976, was fourteen years old on the date of those convictions.

. Although the Louisiana Supreme Court in State v. Brown, 03-2788 (La.7/06/04), 879 So.2d 1276, writ denied, 543 U.S. 826, 125 S.Ct. 158, 160 L.Ed.2d 40 (2004) later struck down the provision in the Habitual Offender law that allowed prior juvenile adjudications rendered without the right to a jury trial to be used as predicate offenses, the provision was in effect at the time of defendant’s guilty plea in 1999 and, thus, advice that the adjudications could be used as predicates was not misleading. See also, State v. Lemon, 05-567 (La.App. 5 Cir. 2/14/06), 923 So.2d 794.

. Defendant committed the instant offense on September 15, 1998. He was sentenced on October 19, 1999. La.C.Cr.P. art. 930.8 was amended to shorten the prescriptive period from three years to two years, effective August 15, 1999. This amendment has been held to be retroactive. State v. Boles, 99-662 (La.App. 5 Cir. 11/10/99), 750 So.2d 1059, 1062.

. See, State v. Jacobs, 07-887 (La.App. 5 Cir. 5/24/11), 67 So.3d 535, writ denied, 11-1753, (La.2/10/12), 80 So.3d 468; State v. Thomas, 10-220 (La.App. 5 Cir. 11/9/10), 54 So.3d 688, writs denied, 10-2758 (La.4/25/11), 62 So.3d 89 and 10-2752 (La.5/20/11), 6 So.3d 974; State v. Neely, 08-707 (La.App. 5 Cir. 12/16/08), 3 So.3d 532, 538, writ denied, 09-0248 (La.10/30/09), 21 So.3d 272; State v. Davenport, 08-463 (La.App. 5 Cir. 11/25/08), 2 So.3d 445, 451, writ denied, 09-0158 (La.10/16/09), 19 So.3d 473; State v. Roche, 05-237 (La.App. 5 Cir. 4/25/06), 928 So.2d 761, 767, 768, writ denied, 06-1566 (La.1/8/07), 948 So.2d 120.

. The law in effect at the time of the commission of the offense is determinative of the penalty that the convicted accused must suffer. State v. Johnson, 08-1156 (La.App. 5 Cir. 4/28/09), 9 So.3d 1084, 1094 n. 9, writ denied, 09-1394 (La.2/26/10), 28 So.3d 268 (citing State v. Sugasti, supra).

. See State v. Gaddis, 07-395 (La.App. 5 Cir. 11/13/07), 973 So.2d 21, 28, writ denied, 08-0156 (La.10/10/08), 993 So.2d 1277; State v. Morgan, 06-529 (La.App. 5 Cir. 12/12/06), 948 So.2d 199, 213; State v. Stevenson, 00-1296 (La.App. 5 Cir. 1/30/01), 778 So.2d 1165, 1166-67.